James H. Holl, III, CA Bar #177885
*jholl@cftc.gov*
Kevin S. Webb
*kwebb@cftc.gov*
Gretchen L. Lowe
*glowe@cftc.gov*
Attorneys for Plaintiff
U.S. Commodity Futures
Trading Commission
1155 21st Street, NW
Washington, DC 20581
Tel. 202-418-5000
Fax 202-418-5538

## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. COMMODITY FUTURES<br>TRADING COMMISSION | )    **SACV11 - 1718 JVS (MLGx)**<br>)<br>)   Case No. |
|         Plaintiff, | )<br>)<br>) |
|     v. | )<br>) |
| NATIONAL EQUITY HOLDINGS,<br>INC., a California Corporation,<br>ROBERT J. CANNONE, an individual,<br>THOMAS B. BREEN, an individual,<br>and FRANCIS FRANCO, an individual | )<br>)<br>)<br>)<br>) |
|        Defendants. | )<br>)<br>)<br>) |

## I.   SUMMARY

1.      From at least May 2009 through at least May 2010 ("relevant period"), Defendant National Equity Holdings, Inc. ("NEH"), an unregistered commodity pool operator ("CPO"), acting through its agents, Defendants Robert J.

1

Cannone ("Cannone"), Thomas B. Breen ("Breen"), and Francis Franco ("Franco") (collectively "Defendants") fraudulently operated a commodity pool as a Ponzi scheme. Defendants, by and through the individual and collective acts of Cannone, Breen and Franco, fraudulently solicited and accepted at least $1,487,930 from at least 20 individuals ("pool participants" or "participants") to participate in a commodity pool called NEH that was to trade commodity futures contracts ("futures"). Defendants traded only a portion of the pool participant funds in proprietary accounts and sustained overall and significant losses of approximately $582,631. Defendants misappropriated the majority of the pool participants' funds to make so-called returns to participants in monthly payments that Defendants claimed were the profitable proceeds of their trading. Defendants Cannone, Breen and Franco each also misappropriated pool participant funds for personal use. Defendants concealed their fraud and trading losses from the pool participants by issuing false account statements reflecting profits. Approximately one year later, Defendants claimed that participants' fund were all lost in trading but promised to return their funds. Pool participants have not received their principal back from Defendants.

       2.     By the aforementioned conduct, Defendant NEH, acting through its agents, and Defendants Cannone, Breen and Franco have engaged, are engaging in, or are about to engage in practices that violate the provisions of the Commodity Exchange Act, as amended by the Food, Conservation, and Energy

Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008) ("CRA"), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 1 *et seq.* (2008).

3.     Specifically, by their acts of fraudulent solicitation, false statements and misappropriation, Defendant NEH, acting through its agents, and Defendants Cannone, Breen and Franco violated the following anti-fraud provisions of CRA: Sections 4b(a)(1)(A), (B), and (C) and 4o(1) of the CEA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) and 6o(1) (2009).

4.     In soliciting and/or accepting funds from individuals for purposes of pooling the funds to trade commodity futures, NEH, acting through its agents, was acting as a CPO, and Cannone, Breen and Franco were acting as Associated Persons ("AP") of NEH without being registered with the Commission as required, in violation of Sections 4m(1) and 4k(2), of the CRA, respectively, 7 U.S.C. §§ 6m(1) and 6k(2) (2008).  NEH also violated Section 4k(2) by permitting Cannone, Breen, and Franco to remain associated with NEH when NEH knew or should have known that the individuals should have been registered with the Commission.  7 U.S.C. § 6k(2) (2008).

5.     At all relevant times, Cannone, Breen and Franco were acting as officers, employees or agents of NEH and committed, are committing, or are about to commit the acts and omissions described herein within the scope of their office, employment or agency with NEH.  Therefore, pursuant to Section

2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B) (2008), as amended by the CRA, and Regulation 1.2, 17 C.F.R. § 1.2 (2011), NEH is liable for the actions and omissions of Cannone, Breen and Franco constituting violations of the CEA, amended by the CRA, as alleged herein, committed by Cannone, Breen and Franco.

6.      Cannone, Breen and Franco are directly or indirectly controlling persons of NEH and failed to act in good faith, or knowingly induced, directly or indirectly, the acts and omissions described and alleged herein. Cannone, Breen and Franco are therefore liable for NEH violations, pursuant to Section 13(b) of the CEA, as amended by the CRA, 7 U.S.C. § 13c(b) (2008).

7.      Cannone, Breen and Franco willfully aided, abetted, counseled, commanded, induced, procured, caused or acted in combination or concert with each other and NEH the foregoing violations of the CEA by each of the Defendants.  Therefore, Cannone, Breen and Franco are each liable for NEH's and each other's violations pursuant to Section 13(a) of the CEA, 7. U.S.C § 13c(a).

8.      Accordingly, pursuant to Section 6c of the CEA, 7 U.S.C. § 13a-1 (2008), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the CEA.  In addition, the Commission seeks civil monetary penalties for each violation of the CRA, remedial ancillary relief, and such other relief as the Court may deem necessary and appropriate.

9. Unless enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, as more fully described below.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Section 6c of the CRA, 7 U.S.C. § 13a-1 (2008), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CRA or any rule, regulation, or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the CRA.

11. Venue properly lies with this Court pursuant to Section 6c(e) of the CRA, 7 U.S.C. § 13a-1(e) (2008), in that Defendants transact business in this District, and the acts and practices in violation of the CRA have occurred, are occurring, or are about to occur, within this District, among other places.

## III. THE PARTIES

12. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for administering and enforcing the provisions of the CRA, 7 U.S.C. §§ 1 *et seq*. (2008), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2011).

13.   **National Equity Holdings, Inc.** is a California corporation established in October 2006 with a business address in Laguna Niguel, California. NEH acted as a commodity pool operator ("CPO") by soliciting and/or accepting funds for the purpose of pooling the funds to trade commodity futures. NEH has never been registered with the Commission in any capacity.

14.   **Robert J. Cannone** is the president, chairman of the board of directors, and chief financial officer of NEH and at all relevant times, controlled the operations of NEH. He was responsible for many of the key facets of NEH's operations, including soliciting prospective participants, and the opening and maintenance of NEH's bank and trading accounts. Cannone acted in concert and coordination with Breen and Franco in operating and controlling NEH. Cannone has never been registered with the Commission in any capacity.

15.   **Thomas B. Breen** is the corporate secretary and director of NEH, and, at all relevant times, controlled the operations of NEH. He was responsible for key aspects of the operations of NEH, including soliciting and communicating with participants and prospective participants, and creating and issuing account statements concerning the pool's trading to participants. Breen acted in concert and coordination with Cannone and Franco in operating and controlling NEH. Breen resides in San Juan Capistrano, California. Breen was previously registered as an AP of two Futures Commission Merchants but has not been registered in any capacity with the Commission since March 1988.

16.     **Francis Franco** is the individual who was the trader for NEH and traded the pool participants' funds.  Franco also participated in the solicitations of prospective participants and other aspects of the operations of NEH.  Franco acted in concert and coordination with Cannone and Breen in operating and controlling NEH.  Franco resides in Anaheim, California.  Franco has never been registered with the Commission in any capacity.

## IV.
## FACTS

### Defendants' Fraudulent Solicitations of Participants

17.     Throughout the relevant period, NEH operated through the acts and omissions of its agents, employees, and officers, Cannone, Breen and Franco. Cannone, Breen and Franco operated NEH together and conspired and schemed to defraud individuals who became participants in the commodity futures pool Defendants operated.  Each act or omission by Cannone, Breen, or Franco in furtherance of the fraudulent scheme was done with the knowledge or consent of the others, and was done knowingly or with reckless disregard for the truth.

18.     In approximately May 2009, NEH, through Cannone, Breen and Franco, began soliciting individuals to participate in a commodity pool which would trade futures.

19.     Cannone and Breen solicited most of the participants through personal meetings or by telephone calls.  At times, Franco participated in the solicitations.

20.     In their solicitations, Cannone, Breen and Franco jointly prepared and provided prospective participants with a document entitled "Trading System Discussion Points" ("NEH Discussion Points") which described the trading program to be employed by NEH and touted the ability of the NEH trader, who was Franco.   The document referenced NEH's "experienced futures trader with 7 years of hands-on, real-time experience" who "brings proven trading success and a long track record of consistent performance in a very niche market – Future Indices."  It also noted his "development of sophisticated technical models and proprietary charts," and referenced his successful, yet false track record.

21.     In an effort to mislead prospective participants regarding the potential risks associated with trading futures, the NEH Discussion Points represented that the "disciplined" trading approach used by Franco was "characterized by capturing significantly high returns with low principal risk" and that "[o]nce implemented, the National Equity trading method is designed to and may substantially minimize overall equity risk and potentially increase the trader's returns."

22.     Accompanying the downplaying of risk in their solicitations, Defendants promoted the likelihood of earning substantial profits.  Specifically, in

their NEH Discussion Points, the Defendants claimed that the trading strategy employed by Franco for NEH "has proven to be exceptionally successful in both up and down markets."

23.    Drawing upon a false track record of largely hypothetical trading "practice," the NEH Discussion Points stated that "the data available has shown the system to produce substantially high returns annually ... [and] a strong emphasis on preservation of capital with the by-product being high returns."

24.    Attempting to instill confidence in the potential participants, when discussing Franco's approach to trading, the NEH Discussion Points maintained that Franco's unique trading methodology "allows for agility in managing the trading platform and is not market performance driven."  Defendants claimed that implementation of stop losses would limit the prospective pool participants capital exposure.

25.    Cannone and Breen reiterated and emphasized the information contained in the NEH Discussion Points document through their oral solicitations, including touting Franco's purported experience and success, the likelihood of substantial profits and the minimal risks of trading futures.

26.    Cannone and Breen encouraged potential participants to invest in order to avoid losing out on the unique opportunity to make money with NEH.

27.    As part of the oral solicitations to further legitimize the scheme, Cannone and Breen introduced Franco to prospective participants and had him

discuss his trading methodology and use trader jargon to impress the prospective participants. Franco repeated the claims about his experience and success and even traded in front of the prospective participants, without disclosing the fact that he was trading a simulated account and not real money.

28.    Franco was neither the experienced, nor the successful futures trader Defendants claimed he was. As Cannone, Breen and Franco knew, Franco had very limited experience with trading commodity futures and he had not been successful. Also, Defendants all knew Franco's trading methodologies did not reduce the inherent risks of trading futures.

29.    Neither Cannone, Breen, nor Franco disclosed to prospective participants that NEH was not registered with the Commission as required to operate a commodity futures pool and trade on trade on behalf of others through a pool, and that Cannone, Breen or Franco were not registered as an Associated Person of NEH, as required to solicit prospective pool participants.

30.    In making their decisions to invest with Defendants, pool participants relied upon these representations and omissions alleged above, including but not limited to the claims that their funds were being traded by an experienced and successful trader, the promises of high returns and low risk of loss, and the failure to disclose their lack of required registration.

31.    Once pool participants decided to participate in the pool, Cannone and Breen provided participants with an informational questionnaire that

asked for information such as the customer's income, trading experience, and basic contact information.  Several participants said this added to the air of legitimacy of Defendants.

32.    Between June 2009 and April 2010, Defendants successfully solicited and accepted over $1.4 million from individuals to trade commodity futures through the pool.

33.    Cannone and Breen directed the pool participants to send their money to the NEH corporate bank account.  Cannone was the signatory on the bank account.

34.    Defendants required pool participants to execute a purchase agreement/ promissory note that committed their funds to the trading program. The note included language that NEH was to make a monthly distribution to the holder of the note based upon the profits earned through the trading for each month.  Defendants Cannone and Breen encouraged participants to have their monthly profit distributions reinvested, and most of the participants did reinvest their purported monthly profit distributions.  Some participants did receive monthly distributions.

35.    NEH pool participants understood that Cannone, Breen, and Franco, through NEH, would pool their funds, use those funds to trade futures, and that they would participate or share in the profits generated by the trading of futures.

36.     As alleged below, Defendants made the monthly distribution payments to participants not from trading profits, but rather from other participants' funds, in a manner akin to a Ponzi scheme.

**Defendants Concealed Trading Losses and Misappropriation**

37.     During the relevant period, NEH, through Cannone, opened commodity futures trading accounts at a registered Futures Commission Merchant. In the account opening documents, Cannone, on behalf of NEH, identified the trading done by NEH as proprietary:  trading on behalf of NEH only and not on behalf of any pool of participants.  Specifically, Cannone represented that the funds in the account were corporate funds.

38.     In executing the account opening documentation, NEH, through Cannone, represented that NEH was not operating in any capacity that required registration.

39.     NEH, through Cannone, gave power of attorney to trade the NEH account to Franco.

40.     Cannone funded the NEH proprietary trading account by wiring pool participant funds from the NEH bank account into the trading account.

41.     Of the approximately $1,487,930 deposited by participants into the NEH bank account Cannone transferred only approximately $905,408 to the NEH trading account.  NEH, through Cannone, withdrew approximately $322,657 from the trading account.  Of the funds actually traded, Franco sustained massive

trading losses and his trading overall resulted in a total loss of the funds, with overall losses of approximately $582,631.

42.     Defendants misappropriated a significant portion of funds in order to make payments of purported profits or returns of principal to pool participants, to forward funds to others, and for personal use.  Defendants returned approximately $422,375 to known pool participants, transferred approximately $356,707 to various unknown third individuals and entities, with several payments noted as payments on promissory notes or quarterly payments, and used approximately $272,825 for their personal use.  Cannone and his wife received approximately$140,600 from the NEH bank accounts; Breen received approximately $86,625 from the NEH bank accounts; and Franco received approximately $30,800 from the NEH bank accounts.  Cannone also transferred approximately $14,800 from the NEH bank accounts to a company named Desert Concepts – a business Cannone and Breen started as their potential "exit strategy" from NEH.

43.     Defendants never disclosed to the pool participants that their funds were being used for these purposes.

44.     To conceal the losses, the misappropriation and the Ponzi scheme, Cannone and Breen prepared and issued false account statements via email that reflected profitable trading and substantial overall gains on a daily and monthly basis.  Cannone and Breen conferred with Franco regarding the

preparation of the account statements. Cannone and Breen sent the false account statements to the NEH pool participants on a monthly basis throughout the relevant period.

45.     A year after commencing their fraudulent scheme, Defendants had depleted the pool participant funds through their trading losses and misappropriation. Cannone, on behalf of the Defendants, dispatched a letter to the pool participants notifying them of the complete loss of their investment with NEH and blaming the wild market turns and the trading losses incurred as a result.

46.     Personally, at meetings between Cannone, Breen and several of the pool participants, Defendants made promises, and sometimes even gave written guarantees to return the funds invested.

47.     To date, participants have not received the promised funds.

## V.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### VIOLATIONS OF SECTIONS 4b(a)(1)(A), (B) and (C): FRAUD BY FRAUDULENT SOLICITATION, FALSE ACCOUNT STATEMENTS, MISAPPROPRIATION

48.     The allegations set forth in paragraphs 1 through 47 are re-alleged and incorporated herein by reference.

49.     As set forth above, during the relevant period, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of any other persons,

where such contracts for future delivery were or could be used for the purposes set forth in Sections 4b(a)(1)(A), (B)  and (C) of the CEA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) (2008), Defendants each cheated or defrauded or attempted to cheat or defraud other persons, and/or willfully deceived or attempted to deceive other persons by: (1) misrepresenting the experience and success of the designated trader for the pool; (2) misrepresenting the likelihood of profits and the risks associated with trading commodity futures; (3) issuing false account statements; (4) misappropriating participants' funds; (5) failing to disclose that they were not properly registered; and (6) failing to disclose their intended uses of pool participant funds.

50.     Cannone, Been and Franco, acting on behalf of and through NEH, engaged in the acts and practices alleged above knowingly, willfully or with reckless disregard for the truth.

51.     By making material misrepresentations and omissions as alleged above, Defendants violated Section 4b(a)(1)(A) and (C) of the CEA, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2008).

52.     By using funds solicited from participants to trade commodity futures for personal benefit, to pay for personal expenses, to funnel to third parties under Cannone's, Breen's and Franco's control and to make payments to participants in a manner akin to a Ponzi scheme, Defendants knowingly

misappropriated funds in violation of Sections 4b(a)(1)(A) and (C) of the CRA, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2008).

53.    By issuing false account statements to pool participants in an attempt to hide Defendants' unsuccessful trading, Defendants knowingly acted in violation of Section 4b(a)(1)(B) of the CRA, 7 U.S.C. §6b(a)(1)(B)(2008).

54.    During the relevant period, Cannone, Breen and Franco each directly or indirectly, controlled NEH and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting NEH's violations of Sections 4b(a)(1)(A), (B) and (C) of the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) (2008). Cannone, Breen and Franco are therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b) to the same extent as NEH.

55.    The foregoing misappropriation, fraudulent acts, misrepresentations, omissions and false statements of Cannone, Breen and Franco occurred within the scope of their employment, office or agency with NEH, they are therefore liable for NEH's violations of Sections 4b(a)(1)(A), (B) and (C) of the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) (2008), pursuant to Section 2(a)(1)(B) of the CRA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

56.    Cannone, Breen, and Franco willfully aided, abetted, counseled, commanded, induced, procured, caused or acted in combination or concert with each other in the foregoing violations of the Act by NEH and each other.  Cannone,

Breen and Franco are therefore responsible for violations of NEH and each other

by operation of Section 13(a) of the Act, 7. U.S.C § 13c(a).

57.     Each act of fraudulent misrepresentation or omission,

solicitation, misappropriation, and false statements during the relevant period,

including but not limited to those specifically alleged herein, is alleged as a

separate and distinct violation of Sections 4b(a)(1)(A), (B) and (C) of the CRA,

7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) (2008).

## COUNT TWO

### VIOLATION OF SECTION 4o(1) OF THE CRA:
### FRAUD AS A CPO and ASSOCIATED PERSON

58.     Paragraphs 1 through 57 are re-alleged and incorporated herein

by reference.

59.     During the relevant period, NEH acted as a CPO by soliciting,

accepting or receiving funds from others and engaging in a business that is of the

nature of an investment trust, syndicate, or similar form of enterprise, for the

purpose of trading in commodities for future delivery on or subject to the rules of a

contract market.

60.     During the relevant period, Cannone, Breen and Franco acted

as APs of NEH by soliciting funds for participation in a pool or supervising the

solicitation of funds or participation in a pool.

61.     During the relevant period, NEH, while acting as a CPO, and

Cannone, Breen and Franco, while acting as APs of NEH, violated Section 4o(1)

of the CRA, as amended, to be codified at 7 U.S.C. § 6o(1), in that Defendants directly or indirectly employed or are employing a device, scheme, or artifice to defraud participants or prospective participants, or have engaged or are engaged in transactions, practices or a course of business which operated or operate as a fraud or deceit upon participants or prospective participants by using the mails or other means or instrumentalities of interstate commerce. Defendants' fraudulent acts consisted of, among other things as alleged above, the fraudulent solicitation of participants, the issuance of false account statements, and the misappropriation of participant funds.

62.     Cannone, Breen and Franco, acting on behalf of and through NEH, engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

63.     Cannone, Breen and Franco each directly or indirectly, controlled NEH and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting NEH's violations of Section 4o(1) of the CRA, 7 U.S.C. § 6o(1) (2008).  Cannone, Breen and Franco are therefore liable for these violations pursuant to Section 13(b) of the CRA, 17 U.S.C. § 13c(b) (2008) to the same extent as NEH.

64.     The foregoing misappropriation, fraudulent acts, misrepresentations, omissions and failures of Cannone, Breen and Franco occurred within the scope of their employment, office or agency with NEH and NEH is

therefore liable for Cannone's, Breen's and Franco's violations of Section 4o(1) of the CRA, 7 U.S.C. § 6o(1) (2008), pursuant to Section 2(a)(1)(B) of the CRA, 7 U.S.C. § 2(a)(1)(B) (2008), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

65.     Cannone, Breen and Franco's foregoing conduct aided and abetted NEH's violations of the CRA in violation of Section 13(a) of the CRA, 7 U.S.C. § 13(c)a (2008).

66.     Each act of fraudulent solicitation, misappropriation and false statement made during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) (A) and (B) of the CRA, 7 U.S.C. § 6o(1) (A) and (B) (2008).

## COUNT THREE

### VIOLATIONS OF SECTIONS 4k(2) AND 4m(1) OF THE CRA: FAILURE TO REGISTER AS AN ASSOCIATED PERSON AND A COMMODITY POOL OPERATOR

67.     The allegations set forth in paragraphs 1 through 66 are re-alleged and incorporated herein by reference.

68.     NEH used the mails or instrumentalities of interstate commerce in or in connection with its business as CPO while failing to register with the Commission as a CPO, in violation of Section 4m(1) of the CRA, 7 U.S.C. § 6m(1) (2008).

69.     Cannone, Breen and Franco, directly or indirectly, controlled NEH and did not act in good faith, or knowingly induced, directly or indirectly, the

acts constituting NEH's violations of Section 4m(1) of the CRA, 7 U.S.C. § 6m(1) (2008).  Cannone, Breen and Franco are therefore liable for this violation pursuant to Section 13(b) of the CRA, 17 U.S.C. § 13c(b) (2008).

70.    In soliciting prospective participants, on behalf of NEH, Cannone, Breen and Franco each failed to register as APs of NEH which was acting as a CPO, in violation of Section 4k(2) of the CRA, 7 U.S.C. § 6k(2) (2008).

71.    The foregoing failures of Cannone, Breen and Franco to register as APs occurred within the scope of their employment, office or agency with NEH, and NEH is therefore liable for his violations of Section 4k(2) of the CRA, 7 U.S.C. § 6k(2) (2008), pursuant to Section 2(a)(1)(B) of the CRA, 7 U.S.C. § 2(a)(1)(B) (2008), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

72.    NEH violated Section 4k(2), 7 U.S.C. § 6k(2) (2009), by allowing Cannone, Breen and Franco to act as unregistered APs of the company when they knew or should have known that Cannone, Breen and Franco were not registered with the Commission.

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, to be codified at 7 U.S.C. §13a-1, and pursuant to its own equitable powers enter:

A.    An order finding Defendants violated: Section 4b(a)(1)(A), (B), and (C) of the Act, as amended, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B) and (C);

and Sections 4k(2), 4m and 4o(1)(A), (B) of the Act, as amended, to be codified at 7 U.S.C. §§ 6k(2), 6m, and 6o(1)(A), (B);

B.    An order of permanent injunction prohibiting Defendants and any other persons or entities in active concert with them from engaging in conduct in violation of Sections 4b(a)(1)(A), (B) and (C), 4k(2), 4m, and 4o(1)(A), (B) of the Act, as amended, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C), 6k(2), 6m, and 6o(1)(A), (B);

C.    An order of permanent injunction prohibiting Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys and persons in active concert with them who receive actual notice of such order by personal service or otherwise, from engaging, directly or indirectly, in:

1.    trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, as amended, to be codified at 7 U.S.C. § 1a(29);

2.    entering into any transactions involving commodity futures, options on commodity futures, swaps, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own

personal account or for any account in which they have a direct or indirect interest;

3. having any commodity futures, options on commodity futures, swaps, commodity options, and/or forex contracts traded on their behalf;

4. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, swaps, commodity options, and/or forex contracts;

5. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, swaps, commodity options, and/or forex contracts;

6. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

7. acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

D.     An order directing Defendants to pay civil monetary penalties under Section 6c of the Act, as amended, to be assessed by the Court separately against each of them, in amounts not more than the higher of $140,000 for each violation occurring after October 22, 2008, or triple the monetary gain to Defendants for each violation of the Act;

E.     An order directing Defendants to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices that constitute violations of the Act, as described here, and prejudgment interest thereon from the date of such violations;

F.     An order directing Defendants to make restitution by making whole each and every pool participant whose funds were received or used by them in violation of the provisions of the Act as described herein, including pre-judgment interest;

G.     An order directing Defendants, and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as amended, as described herein;

H.     An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412 (2006); and

I.     Such further relief as the Court deems appropriate.

Dated: 7 November 2011

ATTORNEYS FOR THE PLAINTIFF
U.S. COMMODITY FUTURES
TRADING COMMISSION

James H. Holl, III, CA Bar #177885
jholl@cftc.gov
Kevin S. Webb
kwebb@cftc.gov
Gretchen L. Lowe
glowe@cftc.gov
U.S. Commodity Futures Trading
Commission
1155 21st Street, NW
Washington, DC 20581
Tel. (202) 418-5000
Fax (202) 418-5538

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>U.S. Commodity Futures Trading Commission | **DEFENDANTS**<br>National Equity Holdings, Inc.; Robert J. Cannone; Thomas B. Breen; Francis Franco |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>James H. Holl, III Chief Trial Attorney<br>U.S. CFTC 1155 21 St, NW<br>Washington, DC 20581  (202)418-5311 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No          ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
7 U.S.C. Section 13a-1; violations of the CFTC Reauthorization Act of 2008

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## SACV11 - 1718 JVS (MLGx)

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _7 November 2011_

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1718 JVS (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.