James H. Holl, III, CA Bar #177885
Kevin S. Webb
Gretchen L. Lowe
Attorneys for Plaintiff
U.S. Commodity Futures
Trading Commission
1155 21st Street, NW
Washington, DC 20581
Tel. 202-418-5000
Fax 202-418-5538

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION<br><br>Plaintiff,<br>v.<br><br>NATIONAL EQUITY HOLDINGS, INC., a California Corporation, ROBERT J. CANNONE, an individual, THOMAS B. BREEN, an individual, and FRANCIS FRANCO, an individual<br><br>Defendants. | Case No. SACV 11-1718-JVS |

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST
NATIONAL EQUITY HOLDINGS, INC and ROBERT J. CANNONE

On November 8, 2011, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Complaint against Defendants National Equity Holdings, Inc., ("NEH"), Robert Cannone, Thomas Breen and Francis Franco collectively ("Defendants") for Permanent Injunction, Civil Penalties, and Other Equitable Relief, for violations of the Commodity Exchange Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008) ("CRA"), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 1 *et seq.* (2008). and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*

1

(2011)].

## I.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against Defendants National Equity Holdings, Inc. ("NEH") and Robert J. Cannone ("Cannone") (collectively "Defendants") without a trial on the merits or any further judicial proceedings, Defendants NEH and Cannone:

1. Consent to the entry of this Consent Order of Permanent Injunction and Other Relief Against NEH and Cannone ("Consent Order");

2. Affirm that Defendants have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledge service of the summons and Complaint;

4. Admit the jurisdiction of this Court over Defendants and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5. Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6. Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7. Waive:

(a) any and all claims that Defendants may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2011), relating to, or arising from, this action;

(b) any and all claims that Defendants may possess under the Small Business

2

Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

        (c)  any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

        (d)  any and all rights of appeal from this Consent Order;

    8.    Consent to the continued jurisdiction of this Court over Defendants for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action, even if NEH or Cannone now or in the future resides outside the jurisdiction of this Court;

    9.    Agree that Defendants will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

    10.    Agree that neither NEH, Cannone, nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Cannone and NEH shall undertake all steps necessary to ensure that their agents or employees under their authority or control understand and comply with this agreement; and

3

11. Admit to all of the allegations in the Complaint. Further, Cannone and NEH agree and intend that the allegations contained herein and in the Complaint shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against NEH and/or Cannone; (b) any proceeding pursuant to Section 8a of the Act, as amended, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011); and/or (c) any proceeding to enforce the terms of this Consent Order.

12. Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 23 of Part V of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against Defendants, whether inside or outside the United States, and

13. Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

II.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. Findings of Fact**

   **1. The Parties To This Consent Order**

14. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

15. **National Equity Holdings, Inc.** is a California corporation established in October 2006 with a business address in Laguna Niguel, California. NEH acted as a commodity pool

4

operator ("CPO") by soliciting and/or accepting funds for the purpose of pooling the funds to trade commodity futures. NEH has never been registered with the Commission in any capacity.

16. **Robert J. Cannone** is the president, chairman of the board of directors, and chief financial officer of NEH and at all relevant times, controlled the operations of NEH. He was responsible for many of the key facets of NEH's operations, including soliciting prospective participants, and the opening and maintenance of NEH's bank and trading accounts. Cannone acted in concert and coordination with Breen and Franco in operating and controlling NEH. Cannone has never been registered with the Commission in any capacity.

17. Throughout the relevant period, NEH operated through the acts and omissions of its agents, employees, and officers, including Cannone. Cannone, together with Breen and Franco, operated NEH together and conspired and schemed to defraud individuals who became participants in the commodity futures pool Defendants operated.

18. In approximately May 2009, NEH, through Cannone, et al. began soliciting individuals to participate in a commodity pool which would trade futures.

19. Cannone and Breen solicited most of the participants through personal meetings or by telephone calls.

20. In their solicitations, Cannone provided prospective participants with a document entitled "Trading System Discussion Points" ("NEH Discussion Points") which described the trading program to be employed by NEH and touted the ability of the NEH trader, who was Franco. The document referenced NEH's "experienced futures trader with 7 years of hands-on, real-time experience" who "brings proven trading success and a long track record of consistent performance in a very niche market – Future Indices." It also noted his "development of sophisticated technical models and proprietary charts," and referenced his successful, yet false track record.

21. In an effort to mislead prospective participants regarding the potential risks associated with trading futures, the NEH Discussion Points represented that the "disciplined" trading approach used by Franco was "characterized by capturing significantly high returns with low principal risk" and that "[o]nce implemented, the National Equity trading method is designed to and may substantially minimize overall equity risk and potentially increase the trader's returns."

22. Accompanying the downplaying of risk in their solicitations, Defendants promoted the likelihood of earning substantial profits. Specifically, in their NEH Discussion Points, the Defendants claimed that the trading strategy employed by Franco for NEH "has proven to be exceptionally successful in both up and down markets."

23. Drawing upon a false track record of largely hypothetical trading "practice," the NEH Discussion Points stated that "the data available has shown the system to produce substantially high returns annually … [and] a strong emphasis on preservation of capital with the by-product being high returns."

24. Attempting to instill confidence in the potential participants, when discussing Franco's approach to trading, the NEH Discussion Points maintained that Franco's unique trading methodology "allows for agility in managing the trading platform and is not market performance driven." Defendants claimed that implementation of stop losses would limit the prospective pool participants capital exposure.

25. Cannone reiterated and emphasized the information contained in the NEH Discussion Points document through their oral solicitations, including touting Franco's purported experience and success, the likelihood of substantial profits and the minimal risks of trading futures.

26. Cannone encouraged potential participants to invest in order to avoid losing out on the unique opportunity to make money with NEH.

6

27. As part of the oral solicitations to further legitimize the scheme, Cannone introduced Franco to prospective participants and had him discuss his trading methodology and use trader jargon to impress the prospective participants. Franco repeated the claims about his experience and success and even traded in front of the prospective participants, without disclosing the fact that he was trading a simulated account and not real money.

28. Franco was neither the experienced, nor the successful futures trader Defendants claimed he was. As Cannone and Franco knew, Franco had very limited experience with trading commodity futures and he had not been successful. Also, Defendants all knew Franco's trading methodologies did not reduce the inherent risks of trading futures.

29. Cannone failed to disclose to prospective participants that NEH was not registered with the Commission as required to operate a commodity futures pool and trade on trade on behalf of others through a pool, and that Cannone, Breen or Franco were not registered as an Associated Person of NEH, as required to solicit prospective pool participants.

30. In making their decisions to invest with Defendants, pool participants relied upon these representations and omissions alleged above, including but not limited to the claims that their funds were being traded by an experienced and successful trader, the promises of high returns and low risk of loss, and the failure to disclose their lack of required registration.

31. Once pool participants decided to participate in the pool, Cannone provided participants with an informational questionnaire that asked for information such as the customer's income, trading experience, and basic contact information. Several participants said this added to the air of legitimacy of Defendants.

32. Between June 2009 and April 2010, Defendants successfully solicited and accepted over $1.4 million from individuals to trade commodity futures through the pool.

33. Cannone directed the pool participants to send their money to the NEH corporate bank account. Cannone was the signatory on the bank account.

7

34. Defendants required pool participants to execute a purchase agreement/ promissory note that committed their funds to the trading program. The note included language that NEH was to make a monthly distribution to the holder of the note based upon the profits earned through the trading for each month. Defendants Cannone encouraged participants to have their monthly profit distributions reinvested, and most of the participants did reinvest their purported monthly profit distributions. Some participants did receive monthly distributions.

35. NEH pool participants understood that Cannone, Breen, and Franco, through NEH, would pool their funds, use those funds to trade futures, and that they would participate or share in the profits generated by the trading of futures.

36. Defendants made the monthly distribution payments to participants not from trading profits, but rather from other participants' funds, in a manner akin to a Ponzi scheme.

**Defendants Concealed Trading Losses and Misappropriation**

37. NEH, through Cannone, opened commodity futures trading accounts at a registered Futures Commission Merchant. In the account opening documents, Cannone, on behalf of NEH, identified the trading done by NEH as proprietary: trading on behalf of NEH only and not on behalf of any pool of participants. Specifically, Cannone represented that the funds in the account were corporate funds.

38. In executing the account opening documentation, NEH, through Cannone, represented that NEH was not operating in any capacity that required registration.

39. NEH, through Cannone, gave power of attorney to trade the NEH account to Franco.

40. Cannone funded the NEH proprietary trading account by wiring pool participant funds from the NEH bank account into the trading account

41. Defendants misappropriated a significant portion of funds in order to make payments of purported profits or returns of principal to pool participants, to forward funds to others, and for personal use.

42. Defendants never disclosed to the pool participants that their funds were being used for these purposes.

43. To conceal the losses, the misappropriation and the Ponzi scheme, Cannone prepared and issued false account statements via email that reflected profitable trading and substantial overall gains on a daily and monthly basis.

44. A year after commencing their fraudulent scheme, Defendants had depleted the pool participant funds through their trading losses and misappropriation. Cannone, on behalf of the Defendants, dispatched a letter to the pool participants notifying them of the complete loss of their investment with NEH and blaming the wild market turns and the trading losses incurred as a result.

45. Personally, at meetings between Cannone, Breen and several of the pool participants, Defendants made promises, and sometimes even gave written guarantees to return the funds invested.

**B. Conclusions of Law**

**Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e), because the Defendants reside in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

3. In or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Sections 4b(a)(1)(A), (B) and (C) of the CEA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C) (2008), Defendants each cheated or defrauded or attempted to cheat or defraud other persons, and/or willfully deceived or attempted to deceive other persons by: (1) misrepresenting the experience and success of the designated trader for the pool; (2) misrepresenting the likelihood of profits and the risks associated with trading commodity futures; (3) issuing false account statements; (4) misappropriating participants' funds; (5) failing to disclose that they were not properly registered; and (6) failing to disclose their intended uses of pool participant funds.

4. Cannone, acting on behalf of and through NEH, engaged in the acts and practices alleged above knowingly, willfully or with reckless disregard for the truth.

5. By making material misrepresentations and omissions as alleged above, Defendants violated Section 4b(a)(1)(A) and (C) of the CEA, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2008).

6. By using funds solicited from participants to trade commodity futures for personal benefit, to pay for personal expenses, to funnel to third parties under Cannone's control and to make payments to participants in a manner akin to a Ponzi scheme, Defendants knowingly misappropriated funds in violation of Sections 4b(a)(1)(A) and (C) of the CRA, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2008).

7. By issuing false account statements to pool participants in an attempt to hide Defendants' unsuccessful trading, Defendants knowingly acted in violation of Section 4b(a)(1)(B) of the CRA, 7 U.S.C. §6b(a)(1)(B)(2008).

8. NEH acted as a CPO by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery on or subject to the rules of a contract market.

9. Cannone acted as an AP of NEH by soliciting funds for participation in a pool or supervising the solicitation of funds or participation in a pool.

10. NEH, while acting as a CPO, and Cannone while acting as an AP of NEH, violated Section 4o(1) of the CRA, as amended, to be codified at 7 U.S.C. § 6o(1), in that Defendants directly or indirectly employed or are employing a device, scheme, or artifice to defraud participants or prospective participants, or have engaged or are engaged in transactions, practices or a course of business which operated or operate as a fraud or deceit upon participants or prospective participants by using the mails or other means or instrumentalities of interstate commerce. Defendants' fraudulent acts consisted of, among other things as alleged above, the fraudulent solicitation of participants, the issuance of false account statements, and the misappropriation of participant funds.

11. NEH used the mails or instrumentalities of interstate commerce in or in connection with its business as CPO while failing to register with the Commission as a CPO, in violation of Section 4m(1) of the CRA, 7 U.S.C. § 6m(1) (2008).
In soliciting prospective participants, on behalf of NEH, Cannone failed to register as an AP of NEH which was acting as a CPO, in violation of Section 4k(2) of the CRA, 7 U.S.C. § 6k(2) (2008).

12. Cannone directly or indirectly, controlled NEH and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting NEH's violations of Sections 4b(a)(1)(A), (B) and (C), and 4k of the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C), 6k (2008).

Cannone is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b) to the same extent as NEH.

13. The foregoing misappropriation, fraudulent acts, misrepresentations, omissions and false statements of Cannone occurred within the scope of his employment, office or agency with NEH, he is therefore liable for NEH's violations of Sections 4b(a)(1)(A), (B) and (C), 4o, and 4m of the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C), 6o and 6m (2008), pursuant to Section 2(a)(1)(B) of the CRA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

14. The Court, being fully advised in the premises, finds there is good cause for entry of this Consent Order and that there is no just reason for delay. The Court therefore directs a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

### III.
### ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

Based upon and in connection with the conduct alleged in the Complaint, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, NEH and Cannone are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(1)(A), (B) and (C), 4k(2), 4m, and 4o(1)(A), (B) of the Act, as amended, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C), 6k(2), 6m, and 6o(1)(A), (B). Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1(a);

    b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), swaps, security futures

12

products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for his own personal account or for any account in which they have a direct or indirect interest;

c. Having any commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

13

## IV.

## STATUTORY AND EQUITABLE RELIEF

1. NEH and Cannone shall pay restitution, plus post-judgment interest, to each defrauded Participant, in accordance with the criminal order in the matter styled *U.S. v. Cannone,* SACR 11-263.

2. Defendant NEH shall pay a civil monetary penalty in the amount of Two Million, Eight Hundred Thousand Dollars $2,800,000.00 ("CMP Obligation"), plus post-judgment interest, within thirty (30) days of the date of the entry of this Consent Order. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

3. Defendant Cannone shall pay a civil monetary penalty in the amount of Eight Hundred Thousand Dollars $800,000.00 ("CMP Obligation"), plus post-judgment interest, within thirty (30) days of the date of the entry of this Consent Order. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

4. Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>Commodity Futures Trading Commission
>Division of Enforcement
>ATTN: Accounts Receivables – AMZ 340
>E-mail Box: 9-AMC-AMZ-AR-CFTC
>DOT/FAA/MMAC
>6500 S. MacArthur Blvd.
>Oklahoma City, OK 73169
>Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendants shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

     5.   Cannone shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. As part of such cooperation, Cannone shall comply, to the full extent of his abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews. Should the CFTC file any additional action(s) related to the subject matter of this action, Cannone is directed to appear in the judicial district in which such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary.

# V.
# MISCELLANEOUS PROVISIONS

1. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Gretchen L. Lowe
> Associate Director
> U.S. Commodity Futures Trading Commission
> 1155 21st St, NW
> Washington DC 20581

All such notices to the Commission shall reference the name and docket number of this action.

Change of Address/Phone: Until such time as Cannone satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Cannone shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

2. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

3. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

4. Waiver: The failure of any party to this Consent Order or of any Participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or Participant at a later time to enforce the same or any other

provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

5. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

6. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Franco, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Cannone.

7. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

8. Cannone understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order Of Permanent Injunction And Other Statutory And Equitable Relief Against National Equity Holdings, Inc. and Robert J. Cannone.*

**IT IS SO ORDERED** on this 11th day of April, 2012.

_____
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED BY:

_____  _____
Robert J. Cannone, individually and on  James H. Holl, III
Behalf of National Equity Holdings, Inc.  Chief Trial Attorney
  U.S. Commodity Futures Trading Commission
  1155 21st St., NW
Date: _____  Washington, DC 20581
  (202)418-5000


  Dated _____

18